UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN LORENZO RANKIN,<br><br>         Plaintiff,<br><br>    v.<br><br>SUISUN POLICE DEP'T, et al.,<br><br>         Defendants. | No.  2:11-cv-145 MCE JFM (PS)<br><br><br>FINDINGS & RECOMMENDATIONS |

I. INTRODUCTION

Plaintiff Juan Lorenzo Rankin, proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on plaintiff's claims that defendants, Suisun City Police Department Police Officers Jose Martinez, Pedro Arroyo and James Sousa, falsely arrested, used excessive force, failed to protect, sexually harassed, and discriminated against him in violation of the Fourth and Fourteenth Amendments.  ECF No. 20 at 1-2.  Plaintiff also alleges state law claims of false imprisonment and false allegations.  Id.

Plaintiff's allegations arise out of an incident involving the parties on the night of January 28, 2009, during which defendants stopped plaintiff because he was operating his bicycle without front or rear reflectors.  Id. at 1.  Following the bicycle stop, there was an altercation between the parties during which plaintiff alleges defendant Martinez choked him while defendant Arroyo stood by and watched.  Id. at 2-3.  Plaintiff also alleges defendant Sousa sexually harassed him

while he was at the hospital, following the altercation with defendants Martinez and Arroyo. Id. at 8.

This case is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21). See 28 U.S.C. § 636(b)(1). Pending before the court is defendants' motion for summary judgment as to plaintiff's Fourth and Fourteenth Amendment claims, pursuant to Fed. R. Civ. P. 56, filed on January 30, 2013. ECF No. 48. Plaintiff filed an opposition on March 6, 2013 (ECF No. 50), to which defendants filed a reply on March 12, 2013 (ECF No. 51).[1] The court has determined that the matter shall be submitted upon the record and briefs on file. E.D. Cal. Local Rule 230(g). For the reasons stated herein, it is recommended that defendants' motion for summary judgment be granted in part and denied in part.

II.   FACTS

It is undisputed that plaintiff was stopped by defendants on the night of January 28, 2009, for not having forward or rear facing reflector lights on his bicycle. Pl.'s Aff. 5 (ECF No. 50); Defs.' Stmt. of Undisp. Undisputed Facts ("SUF") ¶ 4 (ECF No. 48-2). For the purpose of the instant motion for summary judgment, the court finds the following facts are disputed by the parties.

According to defendants, plaintiff was "aggressive" when they attempted to stop him for the traffic violation. SUF ¶¶ 5, 7. Defendants claim plaintiff was standing in the middle of the street using profane language while they attempted to explain to him the reason they stopped him. SUF ¶¶ 8-10. Defendants then claim plaintiff was asked to move to the curb and plaintiff refused. SUF ¶¶ 12-13. Defendants assert plaintiff was told he would be arrested for resisting or obstructing a police officer to which plaintiff replied with more profane language, stating in part,

---

[1] The court notes that after defendants filed their March 12, 2013, reply brief, plaintiff, on March 21, filed two additional documents. One document is styled as a reply to defendants' motion for summary judgment (ECF No. 53), and the other document is styled as summary judgment non-opposition for defendant Arroyo (ECF No. 54). Neither document is signed or dated by plaintiff. On March 26, 2013, defendants filed an objection to plaintiff's March 21, 2013, filings, and in the alternative responded to the contents thereof. ECF No. 56. The court finds that the instant motion for summary judgment can be resolved based on the moving papers, plaintiff's March 6, 2013, affidavit, and defendants' March 12, 2013, reply. For that reason, this court has not considered the documents filed by plaintiff on March 21, 2013, or defendants' response thereto, in making these findings and recommendations.

2

1  "you can't arrest me." SUF ¶ 14. At that point, defendants claim plaintiff was told he was under
2  arrest and, following an approximately fifteen-second delay, plaintiff slammed down his bike and
3  walked to the curb. SUF ¶¶ 15-16.

4  According to defendants, once plaintiff was near the curb he continued to be aggressive
5  and at one point asked an officer if he wanted to box. SUF ¶ 18. Defendants claim that when
6  they were attempting to hold plaintiff's hands behind his back, he "swung his right elbow back
7  toward" an officer's face at which point officers grabbed him "around the torso" to hold him in
8  place and handcuff him. SUF ¶¶ 19-21. Defendants claim plaintiff continued to struggle with the
9  officers and resist their efforts to handcuff him for approximately two minutes. SUF ¶¶ 22-26.
10 Defendants claim plaintiff was searched and five large concealed knives were found on his
11 person. SUF ¶ 28. Defendants assert that at no point during the altercation was a lateral neck
12 restraint or choke hold on plaintiff's neck used to render him unconscious. SUF ¶ 31.

13 On the other hand, in his affidavit, plaintiff claims he walked to the grass without the
14 assistance of the defendants. Pl.'s Aff. 2, 6. Plaintiff claims he did not make any statements to
15 defendants. Id. at 6. Plaintiff claims he followed defendants' commands when they stopped him
16 for the traffic violation. Id. at 6. Plaintiff claims that he "did not offer to box" any officer while
17 his hands were on his head. Id. at 7. Plaintiff denies swinging at an officer, or attempting to
18 attack defendants in any way. Id. at 4-5. Plaintiff claims that defendants did not grab him by the
19 torso, and that defendant Martinez attacked plaintiff from behind and choked him while defendant
20 Arroyo stood by and watched. Id. at 2-3, 5. Plaintiff denies that he fought to keep both hands
21 under his chest while on the ground during the altercation. Id. at 7.

22 It is undisputed that, following plaintiff's arrest, he complained of shortness of breath and
23 was transported by an ambulance to a hospital. SUF ¶ 34; Pl.'s Aff. 7. Defendants argue that
24 defendant Sousa transported plaintiff to county jail without incident, including any sexual
25 harassment. SUF ¶¶ 37-38. On the other hand, plaintiff argues that he was sexually assaulted by
26 defendant Sousa while he was being transported from the hospital to the county jail for
27 processing. Pl.'s Aff. 5.
28 /////

3

Both parties maintain a different account of the incident that occurred the night of January 28, 2009. Plaintiff argues he complied with defendant police officer's requests and was choked without provocation in violation of his constitutional rights. On the other hand, defendants attempt to show that plaintiff was non-compliant and confrontational throughout the incident, thereby warranting the use of some force, albeit not a choke hold, to effectuate his arrest.

III.   LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

---

[2] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

1  "[A] complete failure of proof concerning an essential element of the nonmoving party's case
2  necessarily renders all other facts immaterial." Id. at 323.

3  Consequently, if the moving party meets its initial responsibility, the burden then shifts to
4  the opposing party to establish that a genuine issue as to any material fact actually exists. See
5  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to
6  establish the existence of such a factual dispute, the opposing party may not rely upon the
7  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the
8  form of affidavits, and/or admissible discovery material in support of its contention that such a
9  dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party
10  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
11  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
12  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
13  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return
14  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436
15  (9th Cir. 1987).

16  In the endeavor to establish the existence of a factual dispute, the opposing party need not
17  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
18  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
19  trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce
20  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
21  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
22  amendments).

23  In resolving a summary judgment motion, the court examines the pleadings, depositions,
24  answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R.
25  Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at
26  255. All reasonable inferences that may be drawn from the facts placed before the court must be
27  drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences
28  are not drawn out of the air, and it is the opposing party's obligation to produce a factual

predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

IV.     ANALYSIS

Defendants argue that they are entitled to summary judgment because plaintiff has not presented any evidence that defendants violated his constitutional rights, and they are entitled to qualified immunity.[3]  Defs.' Mem. P. & A. ISO Summ. J. ("Defs.' P. & A.")(ECF No. 48-1).

       A.      Fourth Amendment Search and Seizure Claim

Defendants argue that the arrest and subsequent search of plaintiff's person were not constitutionally unreasonable and therefore did not violate plaintiff's Fourth Amendment rights.[4] Defs.' P. & A. 12-17.  While the allegations related to this cause of action are difficult to decipher, plaintiff essentially alleges that his Fourth Amendment rights were violated when he was arrested without "probable cause[]" and without a "search [seizure] clause."  ECF No. 20 at

---

[3] Defendants also argue that they are entitled to summary judgment because plaintiff failed to timely respond to defendants' requests for admissions, and that the failure to respond operates as an automatic admission of the facts contained in the requests. ECF No. 48-1.  This argument is without merit.  Because admissions are designed to limit factual issues in a case, requests for admissions should not be used to establish "facts which are obviously in dispute," Lakehead Pipe Line Co. v. American Home Assur. Co., 177 F.R.D. 454, 458 (D. Minn. 1997), to "demand that the other party admit the truth of a legal conclusion," even if the conclusion is "attached to operative facts," or to ask the party to admit facts of which he or she has no special knowledge. Disability Rights Council v. Wash. Metro. Area, 234 F.R.D. 1, 3 (D.D.C. 2006).  Here, defendants' requests ask plaintiff to admit, among other things: (1) he swung his right elbow toward an officer's face; (2) he was struggling with the officers; (3) that the officers told him to place his hands behind his back and that he refused to do so and continued to resist the officers; and (4) that his right wrist was handcuffed but he still struggled and did not place his left wrist behind his back.  See Thornton Decl. Ex. A (ECF No. 48-4).  These requests for admissions grossly violate the strictures that such requests not seek to establish facts in obvious dispute, and the court will not accept them as a basis for summary judgment.

[4] At the outset, the parties disagree on who in fact searched plaintiff. Defendants argue that Officer Riley, not a named defendant, performed the search of plaintiff's person.  SUF ¶ 17.  On the other hand, plaintiff argues that Officer Riley was not present during the altercation and subsequent arrest. ECF No. 50.  For the purpose of this motion for summary judgment, the court views the facts in favor of the nonmoving party, plaintiff, and will assume one of the named defendants searched plaintiff's person.

6

2. In his affidavit in opposition to defendants' motion for summary judgment plaintiff reiterates his allegations by stating "no search and seizure," and arguing that he was "[falsely] charged and arrested." Pl.'s Aff. 3, 6, 7. The court construes plaintiff's claims as a challenge to his arrest and subsequent search, not as a challenge to the initial bicycle stop. For the reasons discussed below, the court finds that there is a genuine dispute as to whether plaintiff's arrest and subsequent search were constitutionally reasonable, and defendants' motion for summary judgment on plaintiff's Fourth Amendment claim should be denied.[5]

A search or seizure is analyzed "under traditional standards of reasonableness by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Wyoming v. Houghton, 526 U.S. 295, 300 (1999). "Ordinarily, the reasonableness of a search depends on governmental compliance with the Warrant Clause, which requires authorities to demonstrate probable cause to a neutral magistrate and thereby convince him to provide formal authorization to proceed with a search by issuance of a particularized warrant." United States v. Kincade, 379 F.3d 813, 822 (9th Cir. 2004) (citations omitted). "However, the general rule of the Warrant Clause is not unyielding." Kincade, 379 F.3d at 822. For example, "[i]t is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." United States v. Robinson, 414 U.S. 218, 224 (1973).

"An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure on an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment." Beck v. Ohio, 379 U.S. 89, 96 (1964). Law enforcement officers may make warrantless arrests where there is probable cause to believe that a crime has been committed and the person arrested has committed the offense. Tennessee v.

---

[5] It is unclear from the record, and no evidence was presented by the parties, whether plaintiff was prosecuted or convicted on the charges for which he was arrested, or what the outcome of the state court proceedings was. In any event, defendants are not seeking summary judgment on the ground that plaintiff's Fourth Amendment claim of false arrest is barred by Heck v. Humphrey, 512 U.S. 477 (1984). See, e.g., Cabrera v. City of Huntington Park, 159 F.3d 374, 380-81 (9th Cir. 1998).

1   Garner, 471 U.S. 1, 7 (1985) (citing United States v. Watson, 423 U.S. 411 (1976)). "Probable
2   cause exists where the facts and circumstances within [the arresting officers'] knowledge and of
3   which they had reasonably trustworthy information [are] sufficient in themselves to warrant a
4   wealth of reasonable caution in the belief that an offense has been or is being committed."
5   Draper v. United States, 358 U.S. 307, 313 (1959); see also Beck, 379 U.S. at 96.

6   Here, defendants argue that plaintiff was arrested for resisting police officers and for
7   possession of a concealed weapon. Defs.' P. & A. 17. Resting on evidence presented with their
8   memorandum of points and authorities in support of their motion for summary judgment,
9   defendants argue that plaintiff used profanity when they initiated the bicycle stop, and ignored
10  defendants' instructions to move his bicycle to the side of the road. Id. at 15. Defendants also
11  argue that, after telling plaintiff he was under arrest for refusing their instructions, plaintiff
12  "became increasingly aggressive," challenged an officer to "box," and continued to resist
13  defendants' physical efforts to arrest him. Id. at 16. Plaintiff, on the other hand, resting on
14  evidence presented in his affidavit, disputes those factual assertions and argues that he was
15  "falsely charged an[d] arrested," and defendants do not have "proof of any wrong doing by
16  plaintiff." Pl.'s Aff. 3, 5-6. Specifically, plaintiff argues that he did not say anything to
17  defendants when they initiated the bicycle stop. Id. at 6. Plaintiff argues that he walked to the
18  grass without assistance from the police officers when they asked him to, and he did not refuse to
19  comply with defendants' commands. Id. Plaintiff also argues that he was not resisting police
20  officers by challenging them to box or by keeping his hands under his chest while on the ground.
21  Id. at 7.

22  Here, other than plaintiff's failure to have a reflector on his bicycle, the parties dispute
23  every material fact in this action. Given the parties' patently different versions of the events
24  following defendants' bicycle stop of plaintiff, there very plainly are a genuine disputes as to
25  whether probable cause to arrest plaintiff existed. T.W. Elec. Serv., 809 F.2d at 630. Because
26  defendants' search of plaintiff's person was incident to his arrest, the court also finds that there is
27  a genuine dispute as to whether the search fell under the traditional exception to the warrant
28  requirement. Id.

1          Defendants argue that, in the alternative, their search of plaintiff's person was reasonable,
2   regardless of whether there was probable cause to arrest him. Defs.' P. & A. 14 (citing Terry v.
3   Ohio, 392 U.S. 1, 25-27 (1968)). However, "[t]he scope of the search must be 'strictly tied to and
4   justified by' the circumstances which rendered its initiation permissible." Terry, 392 U.S. at 19
5   (quoting Warden v. Hayden, 387 U.S. 294, 310 (1967) (Fortas, J., concurring)). In this case,
6   because the parties' descriptions of the incident differ so significantly, especially with regard to
7   whether plaintiff posed a danger to defendants, there remains a genuine dispute as to whether
8   defendants' search of plaintiff was constitutionally reasonable. See Terry, 392 U.S. at 30 (finding
9   that when the officer searched petitioner, he "had reasonable grounds to believe that petitioner
10  was armed and dangerous, and it was necessary for the protection of himself and others to take
11  swift measures to discover the true facts and neutralize the threat of harm if it materialized").
12  Whether plaintiff did anything to present circumstances that could give rise to a reasonable belief
13  that he was armed and dangerous is disputed. The officers articulate their reasons for concluding
14  he did. Plaintiff denies that conduct. Each was a percipient witness. The conflicting accounts
15  must be resolved by the trier of fact. Credibility of the percipient witness cannot be determined
16  on summary judgment.
17         Therefore, the court finds that defendants' motion for summary judgment as to plaintiff's
18  Fourth Amendment search and seizure claim must be denied.
19         B.      Fourth Amendment Excessive Force Claim
20         Defendants' argue that their use of force during the bicycle stop was reasonable because
21  plaintiff posed an immediate threat to the safety of the officers and was actively resisting arrest.
22  Defs.' P. & A. 17-22. In his affidavit in opposition to defendants' motion for summary judgment
23  plaintiff argues that he complied with defendants' requests during the bicycle stop and did not
24  attempt to attack defendants or resist their efforts to arrest him. Pl.'s Aff. For the reasons
25  discussed below, the court finds there is a genuine dispute regarding whether the force used by
26  defendants during the altercation was excessive or unreasonable, and defendants' motion for
27  summary judgment on this claim should be denied.
28  /////

A Section 1983 plaintiff bears the burden of pleading and proving that a person acting under color of state law committed the conduct at issue, and that the conduct caused the plaintiff to be deprived of some right, privilege or immunity protected by the Constitution or laws of the United States. See Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997). Claims that law enforcement officers used excessive force in the course of an arrest, investigatory stop or other seizure of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989); Davis v. City of Las Vegas, 478 F.3d 1048, 1054 (9th Cir. 2007). Determining whether the force used is reasonable "requires balancing the 'nature and quality of the intrusion'" on an individual's Fourth Amendment interest against the "'countervailing governmental interests at stake' to determine whether the force used was objectively reasonable under the circumstances." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (quoting Graham, 490 U.S. at 396). The right to make an arrest or investigatory stop carries with it the right to use some degree of physical coercion or threat. Graham, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (citing Terry, 392 U.S. at 20-22); see also Gregory v. County of Maui, 523 F.3d 1103, 1106 (9th Cir. 2008).

In considering the need for force, the court considers three non-exclusive factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010) (quoting Graham, 490 U.S. at 396) (internal quotation marks omitted). Whether the suspect posed an immediate threat to the safety of the officers is the most important factor. Bryan, 630 F.3d at 826 (citing Smith, 394 F.3d at 702). Summary judgment should be granted sparingly on excessive force claims. See Gregory, 523 F.3d at 1106. "This is because such cases almost always turn on a jury's credibility determinations." Smith, 394 F.3d at 701; see also Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.").

With regard to the severity of the crime, it is undisputed that, on the night of January 28, 2009, plaintiff was stopped for a violation of Cal. Veh. Code § 21201(d), for not having forward or rear facing reflector lights on his bicycle. At the outset, the court finds that the severity of the crime was not significant as to warrant the use of any force.

With regard to an immediate threat to the safety of the officers, the parties disagree as to whether plaintiff was aggressive during the parties' confrontation such that he posed a threat. Defendants claim plaintiff used profanity, demonstrated aggressive behavior towards the police officers, and resisted or obstructed them. SUF ¶¶ 7-15. Defendants also claim plaintiff attempted to swing an elbow towards at least one officer while they attempted to search him incident to arrest. SUF ¶ 20. On the other hand, plaintiff denies he was being confrontational and claims that defendant Martinez attacked him from behind and choked him while defendant Arroyo stood by and watched. Pl.'s Aff. 2-3, 5. Plaintiff claims he did not make any statements to defendants, and complied with defendants' directions during the bicycle stop. Id. at 6. Plaintiff also denies having swung an elbow at an officer during the altercation. Id. at 4, 5. Given the differing accounts of the incident, the court finds that there is a genuine dispute as to whether plaintiff posed an immediate threat to the defendants' safety during the bicycle stop.

Finally, the parties disagree as to whether plaintiff was actively resisting arrest or attempting to evade arrest by flight. Defendants maintain that when they told plaintiff he was under arrest because he was resisting or obstructing a police officer, plaintiff did not comply with their request to turn around and place his hands on his head so that they could search him incident to arrest. SUF ¶¶ 14, 17. Defendants further maintain that instead plaintiff squared off his body with Officer Riley, asked him if he wanted to box, and later swung his elbow at him. SUF ¶ 17-18, 20. On the other hand, plaintiff maintains that he did not ask an officer if he wanted to box, swing at an officer, or attempt to attack an officer in any way. Pl.'s Aff. 4-5, 7. Plaintiff also maintains that he was not fighting to keep his hands under his chest while on the ground during the altercation. Id. at 7. Given these differing accounts, the court finds that there is a genuine dispute as to whether plaintiff was actively resisting arrest during the bicycle stop.

/////

Considering the evidence in the light most favorable to plaintiff, and drawing all reasonable inferences for plaintiff, the court finds defendants' motion for summary judgment on plaintiff's excessive force claim fails.  Here, the minor traffic violation involved, the relatively benign threat of profane language, the dispute regarding whether plaintiff resisted officers' directions or swung an elbow at them, and the force and extent of the injuries plaintiff alleges he sustained, are sufficient to create a genuine issue of disputed fact as to whether defendants violated plaintiff's Fourth Amendment right.  See Smith, 394 F.3d at 701 ("Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment in excessive force cases should be granted sparingly") (alterations and quotation omitted).

Therefore, the courts finds that defendants' motion for summary judgment as to plaintiff's Fourth Amendment excessive force claim should be denied.

C.   Qualified Immunity

With regard to plaintiff's Fourth Amendment search and seizure and excessive force claims, defendants argue that, in the alternative, they are entitled to qualified immunity.

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson, 555 U.S. at 231.  Because qualified immunity is "an immunity from suit rather than a mere defense to liability," it must be resolved at the "earliest possible stage in litigation."  Id. at 231-32.

To determine if an official is entitled to qualified immunity the court determines (1) if the facts as alleged state a violation of a constitutional right and (2) if the right is clearly established

/////

/////

1    so that a reasonable official would have known that his conduct was unlawful. Ashcroft v. al-
2    Kidd, ___ U.S. ___, ___, 131 S.Ct. 2074, 2080 (2011).  A negative answer to either question
3    means immunity from suit is appropriate.  Pearson, 555 U.S. at 236.
4         The Fourth Amendment rights to be free from both a warrantless arrest without probable
5    cause and the use of excessive force during an arrest were clearly established at the time the
6    incident occurred.  See, e.g., Terry, 392 U.S. 1; Whitley v. Albers, 475 U.S. 312, 320-21 (1986).
7    As discussed above, the court has found that there is a genuine issue of disputed fact as to
8    whether defendants violated plaintiff's Fourth Amendment rights when they arrested him.  Here,
9    the same dispute of facts that precludes summary judgment also precludes qualified immunity
10   because, viewing the facts in a light most favorable to plaintiff, the court finds that a reasonable
11   officer would have known that his conduct violated plaintiff's Fourth Amendment rights.
12   Therefore, the court finds defendants are not entitled to qualified immunity on plaintiff's Fourth
13   Amendment search and seizure and excessive force claims.
14          D.    Fourth Amendment Sexual Harassment Claim
15        In his second amended complaint, plaintiff alleges defendant Sousa sexually harassed him
16   while he was leaving the hospital in handcuffs.  In particular, plaintiff alleges his pants fell down
17   because he was not permitted to wear a belt, and defendant Sousa made contact with his body by
18   placing his "finger in [plaintiff's] upper buttocks" while pulling plaintiff's pants up for him.  ECF
19   No. 20 at 8.  In their motion for summary judgment, defendants argue that "no officer involved in
20   this incident touched [plaintiff] in any manner."  Defs.' P. & A. 23.  In his affidavit, plaintiff
21   again claims that defendant Sousa sexually assaulted him while he was being transported to
22   county jail but did not provide any evidence in support of his argument.  Pl.'s Aff. 5.  For the
23   reasons discussed below, the court finds that defendants' motion for summary judgment on
24   plaintiff's sexual harassment claim should be granted.
25        Plaintiff's allegations of sexual harassment by defendant Sousa occurred after he was in
26   custody and was in the process of being taken to county jail for processing.  Because plaintiff had
27   been seized by police officers, his claim arising out of the alleged sexual harassment is analyzed
28   under the Fourth Amendment.  Fontana v. Haskin, 262 F.3d 871, 881 (9th Cir. 2001) ("sexual

harassment by a police officer of a criminal suspect during a continuing seizure is analyzed under the Fourth Amendment"). "Beyond the specific proscription of excessive force, the Fourth Amendment generally proscribes unreasonable intrusions on one's bodily integrity, and other harassing and abusive behavior that rises to the level of unreasonable seizure." Fontana, 262 F.3d at 878-79 (internal quotation marks and citations omitted). Further, "'once a seizure has occurred, it continues throughout the time the arrestee is in the custody of the arresting officers.'" Id. at 879-80 (quoting Robins v. Harum, 773 F.2d 1004, 1010 (9th Cir. 1985)). "Of course, not every truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment. Some bodily intrusions may be provably accidental or de minimis and thus constitutionally reasonable." Fontana, 262 F.3d at 880; see also Hicks v. Moore, 422 F.3d 1246, 1253-54 (11th Cir. 2005) ("[N]ot every intrusion, touching, discomfort or embarrassment during an arrest is actionable as a violation of the Fourth Amendment. Some of these acts may be provably accidental or just too insignificant and thus within the range of constitutionally reasonable.").

     Here, plaintiff has provided no evidence to show that defendant Sousa's contact with plaintiff was sexual in nature rather than accidental or de minimis. Fontana, 262 F.3d at 880 (while allegations of sexual bodily intrusion may be actionable as a violation of the Fourth Amendment, de minimis bodily intrusions are constitutionally reasonable); see also Bell v. King County, No. C07-1790-RSM, 2008 WL 4779736, at *2 (W.D. Wash. Oct. 31, 2008) (determining that officer's slapping a plaintiff "once on the butt constitutes a de minimis bodily intrusion and therefore must be deemed constitutionally reasonable"). Plaintiff states that he requested defendant Sousa to assist him with pulling his pants up. Although plaintiff characterizes defendant Sousa's assistance as a sexual assault, plaintiff's affidavit does not contain any facts supporting this characterization. In other words, plaintiff has failed to set forth facts supporting an inference that defendant Sousa's contact with plaintiff had a sexual aspect. See, e.g., Smith v. Los Angeles County, No. CV 07-7028-VAP (MAN), 2010 WL 2569232, at *4-7 (C.D. Cal. Apr. 22, 2010); adopted by 2010 WL 2572570 (C.D. Cal. June 19, 2010); aff'd, 452 Fed. Appx. 768 (9th Cir. 2011) (pretrial detainee failed to state Fourth Amendment unreasonable search claim,

1  based on plaintiff's allegations that defendant correctional officer, pursuant to a search for
2  contraband, "inserted his hand 'karate chop' style, into the cavity of [plaintiff's] buttocks . . . until
3  it passed between [his] legs and reached under and around until he cupped [his] genitals"). The
4  court finds that defendant Sousa's contact with plaintiff in an effort to assist him was merely
5  accidental or de minimis, and therefore constitutionally reasonable. See U.S. v. Willis, 431 F.3d
6  709, 714 (9th Cir. 2005) ("The 'touchstone of the Fourth Amendment is reasonableness.'")
7  (quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991)).

8  Therefore, the courts finds that defendants' motion for summary judgment as to plaintiff's
9  Fourth Amendment sexual harassment claim should be granted.

10  E.   Fourteenth Amendment Equal Protection Claim

11  In their motion for summary judgment, defendants' argue that plaintiff's claim for a
12  violation of his Fourteenth Amendment rights fails because he did not set forth any allegations of
13  discrimination. Defs.' P. & A. 24. For the reasons discussed below, the court finds defendants'
14  motion for summary judgment as to this claim should be granted.

15  The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall
16  . . . deny to any person within its jurisdiction equal protection of its laws." U.S. CONST. amend.
17  XIV, § 1. "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is
18  the prevention of official conduct discriminating on the basis of race." Washington v. Davis, 426
19  U.S. 229, 239 (1976). In a Section 1983 claim alleging a violation of equal protection, a plaintiff
20  "must prove that the defendant acted in a discriminatory manner and that the discrimination was
21  intentional." Fed. Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991) (citing
22  Stones v. Los Angeles Cmty. Coll. Dist., 796 F.2d 270, 275 (9th Cir. 1986)) (additional citations
23  omitted). Further, a plaintiff need "only produce evidence sufficient to establish a genuine issue
24  of fact as to the defendant's motivations." Id.

25  In his second amended complaint, plaintiff pled a violation of his constitutional rights on
26  the basis of "Discrimination or Racism." ECF No. 20 at 1. However, plaintiff has not alleged
27  any instance of racial animus or articulated any basis for a claim of disparate treatment from
28  others similarly situated in his second amended complaint, nor in his affidavit in opposition to

15

1  defendants' motion for summary judgment.  See Pl.'s Aff.

2  Therefore, the court finds that defendants' motion for summary judgment on plaintiff's

3  Fourteenth Amendment equal protection claim must be granted.

4  V.  CONCLUSION

5  Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary

6  judgment (ECF No. 48) be granted in part and denied in part, as follows:

7  1. Defendants' motion for summary judgment be granted as to plaintiff's Fourth

8  Amendment sexual harassment claim and Fourteenth Amendment equal protection claim;

9  2. Defendants' motion for summary judgment be denied as to plaintiff's Fourth

10  Amendment search and seizure claim and Fourth Amendment excessive force claim; and

11  3. Defendant Sousa be dismissed from this action.[6]

12  These findings and recommendations are submitted to the United States District Judge

13  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

14  after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

17  objections shall be filed and served within fourteen days after service of the objections.  The

18  parties are advised that failure to file objections within the specified time may waive the right to

19  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20  DATED: August 26, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

23  rank0145.msj

---

[6] Defendant Arroyo should not be dismissed from this action as plaintiff alleges that, in addition to his Fourth Amendment unlawful search and seizure claim, he failed to protect him because he stood by while defendant Martinez choked him. ECF No. 20 at 3; see, e.g., Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) ("police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen") (citation omitted). This claim was not addressed by defendants in their motion for summary judgment and thus remains part of this action.